IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| **SHARON NEDALYNN EASON** | § | |
| | § | |
| vs. | § | **CIVIL ACTION 6:21cv173** |
| | § | |
| **COMMISSIONER, SOCIAL** | § | |
| **SECURITY ADMINISTRATION** | § | |
| | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff initiated this lawsuit by filing a complaint seeking judicial review of the Commissioner's decision denying her application for Social Security benefits. The matter was referred to the undersigned for findings of fact, conclusions of law and recommendations for the disposition of the matter pursuant to 28 U.S.C. § 636(b)(1). Having considered Plaintiff's brief (ECF 15), the Commissioner's responsive brief (ECF 16), and Plaintiff's reply (ECF 17), the undersigned recommends that the Commissioner's final decision be **AFFIRMED** and that the above-styled lawsuit be **DISMISSED WITH PREJUDICE**.

**PROCEDURAL HISTORY**

Plaintiff protectively filed a Title II application for disability insurance benefits and a Title XVI application for supplemental security income on April 30, 2019, alleging disability beginning on December 5, 2017. The applications were denied initially on July 9, 2019, and again upon reconsideration on October 30, 2019. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ conducted a hearing and entered an unfavorable decision on December

28, 2020.[1]  Plaintiff sought review from the Appeals Council.  On February 24, 2021, the Appeals Council denied the request for review.  As a result, the ALJ's decision became that of the Commissioner.  Plaintiff then filed this lawsuit on April 30, 2021, seeking judicial review of the Commissioner's decision.

## STANDARD

Title II of the Act provides for federal disability insurance benefits.  Title XVI of the Act provides for supplemental security income for the disabled.  The relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See Davis v. Heckler*, 759 F.2d 432, 435 n. 1 (5th Cir. 1983); *Rivers v. Schweiker*, 684 F.2d 1144, 1146, n. 2 (5th Cir. 1982); *Strickland v. Harris*, 615 F.2d 1103, 1105 (5th Cir. 1980).

Judicial review of the denial of disability benefits under section 205(g) of the Act, 42 U.S.C. § 405(g), is limited to "determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence."  *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)); *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (*per curiam*).  A finding of no substantial evidence is appropriate only where there is a conspicuous absence of credible choices or no contrary medical evidence.  *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988) (citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).  Accordingly, the Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the

---

[1] Due to the COVID-19 pandemic, the hearing was conducted by telephone with Plaintiff's consent.  Administrative Record, ECF, 11-2, at *11 (Bates stamp p. 10).

[Commissioner's] decision." *Bowling*, 36 F.3d at 435 (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)); *see Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985). Rather, conflicts in the evidence are for the Commissioner to decide. *Spellman*, 1 F.3d at 360 (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)); *Anthony*, 954 F.2d at 295 (citing *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983)). A decision on the ultimate issue of whether a claimant is disabled, as defined in the Act, rests with the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 455–56 (5th Cir. 2000); Social Security Ruling ("SSR") 96-5p.

"Substantial evidence is more than a scintilla but less than a preponderance—that is, enough that a reasonable mind would judge it sufficient to support the decision." *Pena v. Astrue*, 271 Fed. Appx. 382, 383 (5th Cir. 2003) (citing *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994)). Substantial evidence includes four factors: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability; and (4) the plaintiff's age, education, and work history. *Fraga v. Bowen*, 810 F.2d 1296, 1302 n. 4 (5th Cir. 1987). If supported by substantial evidence, the decision of the Commissioner is conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). However, the Court must do more than "rubber stamp" the Administrative Law Judge's decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner's] findings." *Cook*, 750 F.2d at 393 (5th Cir. 1985). The Court may remand for additional evidence if substantial evidence is lacking or "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994).

A claimant for disability has the burden of proving a disability. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1)(A) and 423(d)(1)(A). A "physical or mental impairment" is an anatomical, physiological, or psychological abnormality which is demonstrable by acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

In order to determine whether a claimant is disabled, the Commissioner must utilize a five–step sequential process. *Villa*, 895 F.2d 1022. A finding of "disabled" or "not disabled" at any step of the sequential process ends the inquiry. *Id*.; see *Bowling*, 36 F.3d at 435 (citing *Harrell*, 862 F.2d at 475). Under the five–step sequential analysis, the Commissioner must determine at Step One whether the claimant is currently engaged in substantial gainful activity. At Step Two, the Commissioner must determine whether one or more of the claimant's impairments are severe. At Step Three, the commissioner must determine whether the claimant has an impairment or combination of impairments that meet or equal one of the listings in Appendix I. Prior to moving to Step Four, the Commissioner must determine the claimant's Residual Functional Capacity ("RFC"), or the most that the claimant can do given his impairments, both severe and non–severe. Then, at Step Four, the Commissioner must determine whether the claimant is capable of performing his past relevant work. Finally, at Step Five, the Commissioner must determine whether the claimant can perform other work available in the local or national economy. 20 C.F.R. §§ 404.1520(b)–(f). An affirmative answer at Step One or a negative answer at Steps Two, Four, or Five results in a finding of "not disabled." *See Villa*, 895 F.2d at 1022. An affirmative answer at Step Three, or an affirmative answer at Steps Four and Five, creates a presumption of disability.

*Id*.  To obtain Title II disability benefits, a plaintiff must show that he was disabled on or before the last day of his insured status. *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981), *cert denied*, 455 U.S. 912, 102 S.Ct. 1263, 71 L.Ed.2d 452 (1982). The burden of proof is on the claimant for the first four steps, but shifts to the Commissioner at Step Five if the claimant shows that he cannot perform his past relevant work. *Anderson v. Sullivan*, 887 F.2d 630, 632–33 (5th Cir. 1989) (*per curiam*).

The procedure for evaluating a mental impairment is set forth in 20 CFR §§ 404.1520a and 416.920a (the "special technique" for assessing mental impairments, supplementing the five-step sequential analysis). First, the ALJ must determine the presence or absence of certain medical findings relevant to the ability to work. 20 CFR §§ 404.1520a(b)(1), 416.920a(b)(1). Second, when the claimant establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation. 20 CFR §§ 404.1520a(c)(2–4), 416.920a(c)(2–4). Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment. 20 CFR §§ 404.1520a(d), 416.920a(d). If the ALJ's assessment is "none" or "mild" in the first three areas of function, and is "none" in the fourth area of function, the claimant's mental impairment is "not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 CFR §§ 404.1520a(d)(1), 416.920a(d)(1). Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a Listing. 20 CFR §§ 404.1520a(d)(2), 416.920a(d)(2). Finally, if a Listing is not met, the ALJ must then perform a residual functional capacity assessment, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding the claimant's mental impairment,

including "a specific finding as to the degree of limitation in each of the functional areas described in [§§ 404.1520a(c)(3), 416.920a(c)(3)]." 20 CFR §§ 404.1520a(d)(3) and (e)(2), 416.920a(d)(3) and (e)(2).

## ALJ'S FINDINGS

The ALJ made the following findings in her December 28, 2020 decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2020.

2. The claimant has not engaged in substantial gainful activity since December 5, 2017, the alleged onset date (20 CFR 404.1571 *et seq*. and 416.971 *et seq*.).

3. The claimant has the following severe impairments: degenerative disc disease, obesity, chronic obstructive pulmonary disease ("COPD"), alcoholic cirrhosis, depressive disorder and anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she is able to lift, carry, push or pull up to ten pounds frequently and twenty pounds occasionally. She is able to sit up to six hours in an eight-hour workday and to stand and/or walk up to two hours in an eight-hour workday. She is able to occasionally climb ramps or stairs, balance, or stoop. The job should not involve kneeling, crouching or crawling, or involve climbing ladders, ropes or scaffolds, work performed near unprotected heights, or hazardous moving mechanical parts. Exposure to dust, odors, fumes or pulmonary irritants should be no more than would be found in a routine office setting. She is able to interact with supervisors as needed to receive work instructions and to work in proximity to co-workers but job should not involve frequent interaction with co-workers. She is able to interact with the general public as needed to refer a member of the public to a supervisor or co-worker for assistance but the job should not involve customer service or other work where interacting with the general public is an essential function of the job.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on February 5, 1972 and was 45 years old, which is defined as a younger individual age 45–49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969 and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 5, 2017 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

## ADMINISTRATIVE RECORD

*Administrative Hearing*

Plaintiff testified at her hearing before the ALJ on December 17, 2020. She stated that she has not driven since October 2015 due to problems with her legs. She did not complete high school and received special education in reading and speech. Plaintiff stated that she previously worked as a cashier and as a head cashier. She estimated that the most she had to lift during that job was forty pounds.

Plaintiff testified that the two conditions that primarily keep her from being able to work are her legs and COPD. She stated that her legs give out causing her to fall if she stands for too long and she cannot walk very far or very fast. Plaintiff explained that she has been using a walker since 2016 but when her knees give out she is unable to catch herself. In addition, when she walks too far she cannot breathe. Plaintiff stated that she changes positions frequently while sitting due

to back pain. She estimated that she can sit for thirty minutes to an hour before needing to change positions, she can stand for thirty minutes before her knees give out and she can only walk about eighty feet. Plaintiff stated that she cannot lift anything while standing and can only lift less than thirty pounds while sitting. She also stated that she is unable to squat or bend. She requires help to bathe, shower or dress.

Plaintiff also testified that she has problems with anxiety and depression, causing her to cry a lot and have memory problems. Plaintiff stated that she needs reminders to take medication and sometimes has difficulty completing tasks. Plaintiff can prepare simple meals, such as making a sandwich, but she does not cook.

A vocational expert, Michael Wiseman, also testified at the hearing. Mr. Wiseman characterized Plaintiff's past work as grocery cashier, DOT 211.462-014, medium, semi-skilled, SVP 3. The ALJ presented a hypothetical of an individual with Plaintiff's age, education and work experience who is able to lift, carry, push or pull up to ten pounds frequently and twenty pounds occasionally, sit up to six hours in eight-hour workday and stand and/or walk up to six hours in an eight-hour workday. The hypothetical individual can occasionally climb ramps or stairs, stoop or climb ladders, ropes or scaffolds and can frequently balance, kneel, crouch or crawl. Mr. Wiseman testified that the hypothetical individual can perform Plaintiff's past work as it is generally performed in the national economy but not as actually performed by Plaintiff. Mr. Wiseman then identified the following jobs that would also be available for the hypothetical individual: (1) electronics assembler, DOT 729.687-010, unskilled, SVP 2, light, with 350,000 jobs in the national economy; (2) housekeeper, DOT 323.687-014, unskilled, SVP 2, light, with 414,000 jobs in the national economy; and (3) packer/inspector, DOT 559.687-074, unskilled, SVP 2, light, with 160,000 jobs in the national economy.

The ALJ then presented another hypothetical where the individual's abilities are reduced to standing and/or walking up to two hours in an eight-hour workday with only occasional climbing ramps or stairs, balancing or stooping, and no kneeling, crouching, crawling, climbing ladders, ropes or scaffolds, or working near unprotected heights or hazardous moving parts. The individual's exposure to dust, odors, fumes, or pulmonary irritants should be no more than found in a routine office setting. She is able to interact with supervisors as needed to receive work instructions and is able to work in proximity to co-workers but the job should not involve frequent interaction with coworkers. The individual is also able to interact with the general public as needed to refer a member of the public to a supervisor or a co-worker for assistance but the job should not involve customer service or other work where interacting with the general public is an essential function of the job. Mr. Wiseman testified that this individual could not perform Plaintiff's past work. He identified the following jobs that would be available: (1) clerical mailer, DOT 209.587-010, unskilled, SVP 2, sedentary, with 92,000 jobs in the national economy; (2) document preparer, DOT 249.587-018, unskilled, SVP 2, sedentary, with 97,000 jobs in the national economy; and (3) optical goods assembler, DOT 713.687-018, unskilled, SVP 2, sedentary, with 72,000 jobs in the national economy. Mr. Wiseman stated that his testimony is consistent with the Dictionary of Occupational Titles ("DOT"). He explained that the DOT does not address variations of sitting and standing so his testimony is also based on his experience. In addition, Mr. Wiseman stated that the job of a document preparer is no longer performed as it is described in the DOT and now involves only scanning documents. His testimony concerning the availability of that job is based on his experience.

If the hypothetical is changed again to add the option to use a walker to stand or ambulate, Mr. Wiseman testified that the same sedentary jobs would still be available because they are all

jobs that can be performed while sitting. If the individual is likely to be absent more than four times per month, Mr. Wiseman opined that competitive employment would be eliminated.

*Medical Record*

Plaintiff went to the emergency room on October 11, 2015 with complaints of back pain, leg pain and hip pain. An MRI of the lumbar spine showed mild degenerative changes with no evidence of stenosis. Plaintiff was diagnosed with a myofascial lumbar strain and treated with Ultram, cyclobenzaprine, and diclofenac. Plaintiff then saw Kevin McNabb, D.C., for chiropractic care in October and November 2015 for neck, upper back, mid back and low back pain. Dr. McNabb rated Plaintiff's pain as mild to moderate.

Plaintiff received care at Wellness Pointe in Longview. On January 26, 2016, Plaintiff complained of knee pain and difficulty raising her right leg. Khoshunda Williams, FNP, noted that Plaintiff ambulated with a walker due to an unsteady gait and decreased range of motion in the right leg. Pulses were normal in all extremities and Plaintiff did not exhibit edema or range of motion limitations in any joints. Plaintiff had decreased sensation to light touch extending from the right knee to right leg and on the inner aspect of the left knee. Plaintiff also had an abrasion to the right knee with surrounding erythema. Plaintiff denied depression. Plaintiff received prescriptions for tramadol and cyclobenzaprine for back pain and muscle spasms, Bactrim for right knee cellulitis, ointment for her knee, and instructions to exercise and lose weight to address obesity. Plaintiff returned for lab review on February 9, 2016. FNP Williams stated that Plaintiff's labs showed low HDL and elevated liver enzymes. Subsequent labs showed hepatitis C and Plaintiff was referred to gastroenterology. FNP Williams saw Plaintiff the following year on February 20, 2017 for gastroenteritis.

Plaintiff saw Dr. Kimberly Page for the first time on March 9, 2018. Plaintiff reported chronic leg numbness and weakness with no feeling in the right leg below the knee, pain in both legs, back pain and recent falls. On examination, Plaintiff was tender to palpation in the lower lumbar spine, she had minimal strength on the right on hip flexion and knee extension and normal strength on the left. Sensation was decreased to light touch in the right leg below the knee. Dr. Page prescribed Neurontin. At a follow up on April 13, 2018, Plaintiff complained of a rash on her, ear pain subsequent to bleeding from the ear, cough and numbness in her arms. Pulmonary examination revealed scattered expiratory wheezes and poor inferior field air movement, but no crackles. Straight leg raises were positive and Plaintiff had eczema on her legs. Dr. Page diagnosed COPD changes, prescribed an albuterol inhaler and advised Plaintiff to stop smoking.

Plaintiff saw Marcus Turley, FNP, at Wellness Pointe on January 11, 2019 for hepatitis C treatment. On examination, Plaintiff had moderate to severe paraspinal muscle tenderness to palpation and positive straight leg raise on the right. Plaintiff reported insomnia. Plaintiff then saw Margaret Dodson, NP, on February 6, 2019 for hepatitis C and a rash on her legs. NP Dodson ordered labs and Plaintiff returned on February 20, 2019 for a follow up. At that visit, NP Dodson ordered a liver ultrasound and treated Plaintiff for herpes. Plaintiff returned on March 13, 2019 with no herpes improvement with medication and reported anxiety since quitting alcohol. Dr. Anita Scribner prescribed Doxycycline Hyclate for hepatitis C and Vistaril for alcohol withdrawal.

Three months later, on June 12, 2019, Plaintiff returned requesting disability paperwork, a refill of gabapentin and a pap smear. On examination, Plaintiff had an anxious mood, rash on her legs, and right leg weakness. Dr. Scribner completed both a Mental Capacity Assessment and a Physical Assessment. Dr. Scribner opined that Plaintiff's only mental capacity limitations are moderate limitations in the ability to handle conflict with others, to respond to requests,

suggestions, criticism, correction and challenges and her ability to keep social interactions free of excessive irritability, sensitivity, argumentativeness or suspiciousness and a mild limitation in her ability to understand and respond to social cues. Dr. Scribner noted that Plaintiff has depression and anxiety and has been sober for 110 days. On the Physical Assessment, Dr. Scribner diagnosed right leg weakness/numbness due to a bulging disc at L3-4 that constantly interferes with attention and concentration required to perform simple work-related tasks. Dr. Scribner estimated that Plaintiff can walk less than one city block without rest or significant pain, sit for three hours in an eight-hour workday and stand/walk for one hour in an eight-hour workday with unscheduled five-minute breaks needed every thirty minutes. She stated that Plaintiff can occasionally lift less than ten pounds and has limitations in performing repetitive reaching, handling and fingering, but no limitations on grasping, fine manipulation and reaching with the arms. Dr. Scribner concluded that Plaintiff's medications are ineffective, she will need to recline or lie down during an eight-hour work day in excess of the normal breaks and lunch break and she will have more than four absences per month.

State agency medical consultants reviewed the medical record and completed residual functional capacity ("RFC") assessments. Dr. Roberta Herman completed a physical RFC assessment on June 26, 2019 stating that Plaintiff can occasionally lift, carry, push or pull twenty pounds, frequently lift, carry, push, or pull ten pounds, stand and/or walk for six hours, sit for six hours, occasionally climb ramps, stairs, ladders, ropes or scaffolds, and stoop and frequently balance, kneel, crouch or crawl. On reconsideration, Dr. Scott Spoor agreed with Dr. Herman's assessment.

On July 3, 2019, Mark Schade, Ph.D., opined that Plaintiff's mental impairments do not meet a listing. Susan Posey, Psy.D., affirmed that finding on reconsideration on October 25, 2019.

Plaintiff returned to Dr. Scribner on September 25, 2019 complaining of aching joints. She continued to have an anxious mood and right leg weakness. At a follow up on November 21, 2019, Plaintiff's labs continued to show elevated liver enzymes, diagnosed as alcoholic cirrhosis of liver without ascites. On February 13, 2020, Plaintiff requested a walker prescription and complained that her inhaler was no longer helping. Dr. Scribner changed Plaintiff's inhaler prescription and counseled her to stop smoking. When Plaintiff returned on July 16, 2020, she reported drinking twice per month, rolling her own cigarettes and gaining weight. On examination, her lungs were clear to auscultation, her mood was anxious, she had right leg weakness and a rash to her legs. Dr. Scribner refilled medications.

## DISCUSSION AND ANALYSIS

In her brief, Plaintiff identifies one issue for review: whether the ALJ failed to properly evaluate and explain her analysis of the opinion of treating physician Anita Scribner, M.D., in violation of agency regulations, yielding an RFC that is not supported by substantial evidence. Plaintiff asserts that the ALJ only discussed evidence supporting her conclusion and did not adequately address the supportability of Dr. Scribner's opinion. For example, Plaintiff submits that the ALJ referenced right leg weakness and lungs clear to auscultation without adequately considering evidence of decreased range of motion, degenerative changes in the lumbar spine with disc bulge, or her use of a walker for an unsteady gait. Plaintiff further contends that the ALJ did not consider treatment notes that are consistent with Dr. Scribner's opinion and she did not provide good reasons to find Dr. Scribner's opinion unpersuasive.

In response, the Commissioner asserts that the ALJ's RFC finding is supported by substantial evidence. The Commissioner submits that the ALJ applied the correct standard for determining the persuasiveness of Dr. Scribner's opinion, as well as the prior administrative

medical findings. The ALJ thoroughly discussed Dr. Scribner's examination and opinion concerning Plaintiff's physical and mental limitations and included limitations in Plaintiff's RFC for the findings that were supported by the record. The Commissioner argues that the nurse practitioner treatment notes and MRI relied on by Plaintiff to support additional limitations in Dr. Scribner's opinion pre-date Plaintiff's alleged disability onset date. According to the Commissioner, the ALJ correctly evaluated the supportability and consistency of Dr. Scribner's opinions and ultimately assessed a more restrictive RFC than the findings of the State agency medical consultants.

In her reply, Plaintiff re-asserts her allegation that the ALJ failed to consider clinical observations and objective medical findings of tenderness in the paraspinal muscles, positive straight leg raise, decreased range-of-motion in her right lower extremity, minimal strength in right hip flexion and knee extension, decreased sensation to light touch in the right lower extremity inferior to the knee, and ambulation with the use of a walker due to an unsteady gait. Plaintiff argues that the ALJ violated 20 C.F.R. §§ 404.1520c(b) and 416.920c(b) by failing to properly weigh and explain her consideration of Dr. Scribner's opinion.

It is the ALJ's responsibility to determine a claimant's residual functional capacity. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). That finding, however, must be supported by substantial evidence. *Id*. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Newton v. Apfel*, 209 F.3d at 452. On review, the Court will scrutinize the record to determine whether substantial evidence is present to support the ALJ's finding, but the Court cannot reweigh the evidence or substitute its judgment. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). "If the Commissioner's fact findings are

14

supported by substantial evidence, they are conclusive." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971)).

The revised rules for the consideration and articulation of medical opinions apply to claims filed after March 27, 2017. 20 C.F.R. § 404.1520c. Plaintiff filed her application on April 30, 2019. Pursuant to 20 C.F.R. § 404.1520c(a), the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." The ALJ evaluates the persuasiveness of the medical opinions and articulates the consideration of medical opinions, but the ALJ is not required to explain the consideration of each factor that is considered. 20 C.F.R. § 404.1520c(b). The "supportability" and "consistency" factors are most important. *Id*.

Contrary to Plaintiff's arguments, the ALJ specifically and thoroughly discussed and considered all of the treatment notes, including those prior to the alleged disability onset date. The ALJ specifically referenced her lumbar MRI findings, her nurse practitioner visits, complaints of numbness in her right leg, the use of a walker for unsteady gait, decreased range of motion in the right leg, paraspinal tenderness, positive straight leg raise, and minimal strength in right hip flexion and knee extension.[2] She also summarized the subsequent examinations by Dr. Page, FNP Turney, and NP Dodson showing improvement with gabapentin, lungs clear to auscultation with no wheezing, continued paraspinal tenderness and positive straight leg raise. Finally, the ALJ summarized Dr. Scribner's examinations in 2019 and 2020 and her June 12, 2019 Mental Capacity Assessment and Physical Assessment. From Dr. Scribner's treatment notes, the ALJ noted a depression screening score of zero on multiple occasions, anxiety, lungs clear to auscultation,

---

[2] Administrative Record, ECF 11-2, at *17-18 (Bates stamp p. 17).

diffuse wheezing, no muscle tenderness, joint pain, right leg weakness, COPD with acute exacerbation, pain in hands and feet, and right leg numbness.

After summarizing the treatment records, the ALJ turned to consideration of the medical opinions. The ALJ explained that she did not find the opinions of State agency medical consultants Dr. Herman and Dr. Spoor—finding that Plaintiff can perform light work activity—persuasive because the medical evidence, including Plaintiff's testimony, support greater physical limitations. She noted that the psychological consultants did not find a severe impairment and therefore offered no opinion as to Plaintiff's mental RFC. Concerning Dr. Scribner, the ALJ stated:

> Dr. Scribner's opinion regarding the claimant's ability to interact with others is persuasive when her mental impairment and pain are considered together. Dr. Scribner's opinions as to the claimant's physical limitations are no[t] persuasive because they are not consistent with the medical evidence including all reports and objective imaging and Dr. Scribner's own medical evidence does not support her extreme limitations. The office visits show right leg weakness. Most visits revealed the claimant's lungs were clear to auscultation. The combination of her impairments is not severe enough to limit the claimant so extensively.

Administrative Record, ECF 11-2, at *21 (Bates stamp p. 20). The ALJ further explained that the record shows conservative mental and physical health treatment, no inpatient hospitalizations or urgent emergency room visits for physical or psychological conditions, and no specialized physical or mental health care. The ALJ did not find a requirement for the use of a walker. The ALJ concluded that Plaintiff's allegations and subjective complaints, in line with Dr. Scribner's functional assessments, lack consistency with the record as a whole.

Plaintiff takes a very narrow view of the ALJ's evaluation of the persuasiveness of Dr. Scribner's opinion and complains that, in that one paragraph, the ALJ did not discuss treatment notes that support Dr. Scribner's findings. A reading of the ALJ's entire RFC discussion, however, refutes that assertion and reveals that the ALJ thoroughly considered all of the evidence, including

16

evidence supporting Dr. Scribner's opinion and Plaintiff's allegations. The ALJ considered evidence in the record of Plaintiff's use of a walker, but found no evidence that it is required.

Here, the ALJ addressed both the supportability and consistency of Dr. Scribner's opinions and identified specific medical evidence to support her conclusions. Plaintiff has not shown that the ALJ failed to properly consider the opinion of Dr. Scribner in compliance with the revised regulations and her finding is supported by substantial evidence. The Commissioner's decision should be affirmed and the complaint should be dismissed.

## RECOMMENDATION

It is hereby **RECOMMENDED** that the Commissioner's final decision be **AFFIRMED** and that this social security action be **DISMISSED WITH PREJUDICE**.

Within fourteen days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b).

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after service shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Assn.*, 79 F.3d 1415, 1430 (5th Cir.1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

So ORDERED and SIGNED this 21st day of May, 2022.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE